UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |
|---|---|
| BRANDON DeMYER and TAMARA DeMYER, NEXT FRIEND OF BRANDON DeMYER, PPA, <br><br> Plaintiffs, <br><br> v. <br><br> BOMBARDIER RECREATIONAL PRODUCTS, INC., BRP US, INC., SPOFFORD MOTORS, INC., and TIG INSURANCE COMPANY, <br><br> Defendants, <br><br> v. <br><br> MR. LANCE JAY BINGHAM and MR. DAVID REICHERT <br><br> Third-Party Defendants. | CIVIL ACTION NO: 2005-30003-MAP |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF BRP US, INC., TO THE CROSS-CLAIMS OF SPOFFORD MOTORS, INC.

Defendant BRP US, Inc., ("BRP US") hereby responds to the cross-claims appearing in the Answer and Cross-Claims of Spofford Motors, Inc., dated February 9, 2005, beginning on page six of that pleading.  Proper service upon Bombardier Recreational Products, Inc., a Canadian corporation having a principal place of business in Valcourt, Quebec, Canada, requires adherence to the relevant provisions set forth in the Hague Convention.  To date, neither Plaintiffs nor Co-Defendant Spofford Motors has made proper service upon Bombardier Recreational Products, Inc.  As a result, only BRP US, Inc., provides the following answer, affirmative defenses, and counterclaims.

## I.    CROSS-CLAIMS

1.    Without knowledge.  (As used herein, the phrase "without knowledge" shall mean that (1) despite reasonable inquiry, BRP US, is without sufficient knowledge or information necessary to form a belief as to the truth of the allegation, (2) BRP US, therefore, denies same, and (3) BRP US, therefore, leaves Plaintiffs to their proof.)

2.    Admitted.

3.    Admitted.

4.    Admitted that it is the belief of BRP US, Inc., that Mr. Bingham is the father of Brandon DeMyer, but that he currently resides in East Clinton, New York, not Brainard, New York.

5.    Admitted.

6.    Admitted.

7.    Admitted.

8.    Admitted.

**COUNT I**
**(Indemnification Against Bombardier and BRP US, Inc.)**

9.    BRP US, Inc. reasserts it responses to Paragraphs 1 through 8 above as if fully set forth herein..

10.    Admitted that BRP US distributed the vehicle in question.  Denied as to the remainder of this paragraph.

11.    Denied.

- 2 -

**PRAYER FOR RELIEF**

BRP US, Inc., respectfully requests that the Court deny Spofford Motors, Inc.'s prayer for relief.

**COUNT II**
**(Contribution Against Mr. Lance J. Bingham)**

12.     BRP US, Inc., reasserts it responses to Paragraphs 1 through 11 above as if fully set forth herein..

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

**COUNT III**
**(Contribution Against Mr. David Reichart)**

17.     BRP US, Inc., reasserts it responses to Paragraphs 1 through 16 above as if fully set forth herein..

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

II.    **AFFIRMATIVE DEFENSES**

**First Affirmative Defense**

Co-defendants have failed to state a claim upon which relief may be granted.

**Second Affirmative Defense**

Co-defendant's damages, if any, were caused by a third party for whom BRP US is not responsible.

- 3 -

1128320v1

### Third Affirmative Defense

Co-Defendant's damages, if any, were caused solely by the negligence of Master DeMyer, Tamara DeMeyer, and/or others. Any damages should be barred, reduced in proportion to the negligence of Master DeMyer.

### Fourth Affirmative Defense

The subject equipment was changed in substance and form after it left the control of BRP US by the conduct of one or more entity(ies) for whose conduct BRP US is not responsible.

### Fifth Affirmative Defense

If any defect existed in the equipment which is the subject matter of this action, which BRP US expressly denies, Co-defendant's are barred from recovery because Master DeMyer, Tamara DeMyer, and/or others violated their own duty to act responsibly with respect to the product, and such conduct was the cause of his injuries.

### Sixth Affirmative Defense

Plaintiffs acted in violation of law, statute, regulation, or ordinance, and therefore, they cannot recover.

### Seventh Affirmative Defense

BRP US claims all defenses as identified in Correia v. Firestone Tire & Rubber Co., 388 Mass. 342 (1983).

### Eighth Affirmative Defense

Co-defendant's knowingly assumed the risk of Master DeMyer's damages.

### Ninth Affirmative Defense

Co-Defendant's negligence proximately caused the injuries suffered by Master DeMyer, and its negligence exceeded that of BRP US. As a result, it is barred from recovering against BRP US.

**Tenth Affirmative Defense**

BRP US hereby incorporates all affirmative defenses appearing in its operative Answers & Affirmative defenses to the Complaint.

**III.    COUNTERCLAIMS**

**PARTIES**

1.      Defendant/Third-party Plaintiff, BRP US, Inc., ("BRP US") is a domestic corporation with its principle place of business in Sturtevant, Wisconsin.

2.      Third-party Defendant, Mr. Lance Jay Bingham, is the father of Plaintiff Brandon DeMyer and has a last-known residential address of 14 Homestead Road East Clinton, NY 13323.

3.      Third-party Defendant, Mr. David Reichert, is the present and/or former owner of a Bombardier DS650 all-terrain vehicle (VIN#: 2BVBBCB15YV002497) ("subject vehicle"), who has a last known residential address of P.O. Box 101, West Lebanon, New York, and who owned the subject vehicle at the time of an accident alleged to have occurred on or about June 7, 2002, as alleged in Plaintiffs' Complaint (Ex. A).

**FACTS**

4.      In a demand letter dated September 4, 2003, counsel for Plaintiffs alleged as follows:

> David Reichart purchased a used Bombardier DS 650 all-terrain vehicle . . . sometime prior to June 7, 2002. On June 7, 2002, Lance J. Bingham, who is Brandon [DeMyer's] father, borrowed Mr. Reichart's Bombardier so that he could take his son riding. As Mr. Bingham operated the Bombardier with his son sitting in front of him, a cooling hose, which led from the radiator to the engine, dislodged and doused Brandon with hot cooling fluid.
>
> . . . .

- 5 -

> As a result of the coolant hose dislodging, Brandon was sprayed with coolant that was at or near its maximum operating temperature. The coolant was so hot that it caused the skin on Mr. [DeMyer's] left leg to blister from his thigh to his ankle. . . . Brandon [received] first, second, and third degree burns that covered his leg. . . ."

(Ex. B).

5.      On or about December 15, 2004, Brandon DeMyer and his mother and next friend, Tamara DeMyer, brought suit in State District Court of Northern Berkshire, to recover for the injuries allegedly sustained by Mr. DeMyer.  Plaintiffs claim that Bombardier Recreational Products, Inc., BRP US, Spofford Motors, Inc., and TIG Insurance Company are responsible for their damages as a result of the alleged incident.  (Ex. A.)

## COUNT I
### (Indemnification As Against Spofford Motors, Inc.)

6.      BRP US repeats the allegations in Paragraphs 1 through 5 above as if fully set forth herein.

7.      Any personal injuries and consequential damages sustained by Plaintiffs were caused solely and directly by the negligent acts or omissions of Spofford Motors, Inc.

8.      If BRP US is found liable to Plaintiffs, which BRP US expressly denies, its liability is vicarious and derivative, and it exists only because of the negligence of Spofford Motors, Inc.

WHEREFORE, BRP US demands judgment against Spofford Motors, Inc., for indemnification for any and all sums that may be adjudged against BRP US, including (1) all costs and fees incurred in defending Plaintiffs' claims and in prosecuting its Third-Party Complaint and (2) such other relief as the Court deems just and proper.

1128320v1

## COUNT II
### (Contribution As Against Spofford Motors, Inc.)

9.      BRP US repeats the allegations in Paragraphs 1 through 8 above as if fully set forth herein.

10.     Any personal injury and consequential damages sustained by Plaintiffs were the direct and proximate result of the negligence of Spofford Motors, Inc.

11.     If it is determined that BRP US is liable in this action, which BRP US expressly denies, then such liability resulted from the actions or omissions for which Spofford Motors, Inc., is liable.

12.     By reason of the negligence of Spofford Motors, Inc., BRP US is entitled to contribution for all of the alleged injuries and damages alleged in the Complaint.

WHEREFORE, BRP US respectfully requests this Court to enter judgment against Spofford Motors, Inc., for the pro rata share of Spofford Motors, Inc., of the entire liability of BRP US to Plaintiffs, including all costs and fees incurred in defending Plaintiff's claim and in prosecuting its Third-Party Complaint, and such other relief as the Court deems just and proper.

## IV.    DEMAND FOR JURY-TRIAL

BRP US INC DEMANDS A TRIAL BY JURY AS TO ALL ISSUES PROPERLY TRIABLE TO A JURY.

                                        BRP US, INC.


                                        /s/*William A. Staar*
                          By:           _____
                                        Mark S. Granger, Esq., BBO# 206920
                                        William A. Staar, Esq., BBO# 659425
                                        MORRISON MAHONEY LLP
                                        250 Summer Street
                                        Boston, MA  02210
                                        (617) 439-7500

Date:  March 1, 2005

## CERTIFICATE OF SERVICE

I hereby certify that it is my understanding that the following counsel of record have registered with the Court for receipt of filed documents electronically via the Court's CM/ECF system. As a result, I will not forward these counsel paper copies of the foregoing:

Lucy Prashker, Esq.
Dennis LaRochelle, Esq.
CAIN HIBBARD MYER & COOK, PC
66 West Street
Pittsfield, MA 01201
**Counsel for Defendant Spofford Motors,**
**d/b/a Village Automotive**

James F. Martin, Esq.
ROBINSON DONOVAN, P.C.
1500 Main St. Suite 1600
Springfield, MA. 01115-5609
**Counsel for Defendant**
**TIG Insurance Company**

I hereby certify that it is my understanding that the following counsel of record has/have not registered for electronic receipt of filed documents via the Court's CM/ECF system. As a result, I have served the foregoing on this/counsel by mailing same to him/her/them, posted prepaid, on this 1st day of March 2005:

Adam Clermont, Esquire
FREEDMAN, DEROSA, AND RONDEAU
P.O. Box 746
87 Marshall Street
Mass MoCA, Bldg. 1, Rm. 200
North Adams, MA 01247
**Counsel for Plaintiffs**

*/s/ William A. Staar*
_____
William A. Staar

# EXHIBIT A

12/22/2024  11:24    262-884-5351    FINANCE    PAGE 03/2↑

*Trial Court of The Commonwealth*
*Northern Berkshire District Court*

Berkshire, ss

BRANDON DeMYER and TAMARA DeMYER,
Next Friend of Brandon DeMyer, PPA          )
    Plaintiffs                               )
                               )
v.                                          )
                               )
BOMBARDIER RECREATIONAL PRODUCTS, INC.,     )          Civil Action No. _____
BRP US, INC., SPOFFORD MOTORS, INC.         )
and TIG INSURANCE COMPANY,                  )
    Defendants                               )
                               )

## SUMMONS
(Rule 4)

a/k/a Bombardier Motor Corporation
 of America, Inc.
To defendant  BRP US, Inc.      of    10101 Science Drive
          (name)                    Sturtevant, WI 53177
                                       (address)

You are hereby summoned and required to serve upon _____Adam Clermont_____, plaintiff ('s
attorney), whose address is_____P.O. Box 746, North Adams, MA 01247_____, a copy of
your answer to the complaint which is herewith served upon you, within 20 days after service of this summons,
exclusive of the day of service. You are also required to file your answer to the complaint in the office of the Clerk
of this court either before service upon plaintiff('s attorney), or within 5 days thereafter. If you fail to meet the
above requirements, judgment by default may be rendered against you for the relief demanded in the complaint.
You need not appear personally in court to answer the complaint.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have
against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will be barred from making such claim in any other action.

WITNESS MICHAEL J. RIPPS, Presiding Justice, on ____December 15, 2004____
(SEAL)

                                             Timothy J. Morey, Clerk-Magistrate

Note:   (1)  When more than one defendant is involved, the names of all defendants should appear in the action. If a separate summons is used for each
            defendant, each should be addressed to the particular defendant.
       (2)  The number assigned to the complaint by the Clerk at commencement of the action should be affixed to this summons before it is served.

## RETURN OF SERVICE

| Date of Service: | I served a copy of the within summons, together with a copy of the complaint in this action, upon the within named defendant, in the following manner (see Rule 4 (d) (1-5): |
|---|---|

                                      Signature _____
                                      Name & Title_____
                                        Address_____

Note   (1)  The person serving the process shall make proof of service thereof in writing to the court and to the party or his/her attorney, as the case may be,
           who has requested such service. Proof of service shall be made promptly and in any event with the same time during which the person served
           must respond to the process. Rule 4(f)
       (2)  Please date you make service on defendant in the box on the copy served on the defendant, on the original returned to the court and on the
           copy returned to the person requesting service or his attorney.
       (3)  If service is made at the last and usual place of abode, the officer shall forthwith mail first class a copy of the summons to such last and usual place
           of abode, and shall set forth in the return the date of mailing and the address to which the summons was sent (G.L. c.223, sec.31)

This form prescribed by the Chief Justice of the District Court

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT

Berkshire, ss.                          DISTRICT COURT DEPARTMENT
                                        NORTHERN BERKSHIRE DIVISION
                                        CIVIL ACTION NO.:

BRANDON DEMYER and                  )
TAMARA DEMYER, NEXT FRIEND          )
OF BRANDON DEMYER, PPA,             )
      Plaintiff                     )
                                    )
v.                                  )          COMPLAINT
                                    )
BOMBARDIER RECREATIONAL PRODUCTS,   )
INC., BRP US, INC., SPOFFORD        )
MOTORS, INC. and TIG INSURANCE      )
COMPANY,                            )
      Defendants                    )

1.    Plaintiff, Brandon DeMyer, is an individual who resided at
      1 Ingraham Road, New Ashford, Massachusetts at the time of
      the incident that is the subject matter of this litigation.

2.    Plaintiff, Tamara DeMyer, is the mother and next friend of
      Brandon DeMyer and currently resides at 118 Huntington
      Green Drive, Jacksonville, North Carolina, 28546.

3.    Defendant, Bombardier Recreational Products, Inc. is a
      foreign corporation with a principal place of business of
      1061, rue Parent, Saint-Bruno (Quebec) Canada J3V601.

4.    Defendant, BRP US, Inc., a/k/a as Bombardier Motor
      Corporation of America, Inc., is a foreign corporation with
      a principal place of business of 10101 Science Drive,
      Sturtevant, WI 53177.

5.    Defendant, Spofford Motors, Inc. d/b/a Village Automotive
      is a foreign corporation with a mailing address of Rt 67 BX
      78, North Hoosick, New York, 12133.

6.    Defendant TIG Insurance Company is a foreign corporation
      with a principal place of business of 5205 North O'Connor
      Boulevard, Irving, TX 75015.

## FACTUAL BACKGROUND

7. On or about October 29, 2003, Spofford Motors, Inc. sold a Bombardier DS650 (VIN #2BVBBCB15YV002497) ATV (the "ATV") that was manufactured and/or distributed by BRP US, Inc., Bombardier Motor Corporation of America, Inc. and/or Bombardier Recreational Products, Inc.

8. On June 7, 2002, Brandon DeMyer was riding on the ATV in a field located in New Ashford, Massachusetts when the cooling hose detached suddenly and without warning.

9. As a result of the cooling hose detaching, hot liquid sprayed Mr. DeMyer's legs, causing severe burns to his body.

10. On November 14, 2003, the Plaintiffs, through counsel, sent to BRP US, Inc. a formal demand, via certified mail and pursuant to M.G.L. c. 93A, for settlement of the liability claim. A true and accurate copy of the M.G.L. c. 93A demand letter is attached hereto as Exhibit A.

11. An authorized representative of BRP US, Inc. received the demand letter referred to in Paragraph 10 on November 18, 2003.

12. On December 17, 2003, Mark Granger, Esquire, responded to the demand letter referred to in paragraph 10 on behalf of BRP US, Inc. A true and accurate copy of the response to the Plaintiffs' demand is attached hereto as Exhibit B.

13. In its response to the Plaintiffs' demand, BRP US, Inc. failed to make any offer of settlement.

14. At the time of the incident referred to in this Complaint, Spofford Motors, Inc. was covered by a policy of liability insurance issued by TIG Insurance Company.

15. On September 4, 2003, the Plaintiffs, through counsel, sent to an authorized representative of TIG Insurance Company, a formal demand for settlement, via certified mail, for settlement of the liability claim. A true and accurate copy of the demand letter is attached hereto as Exhibit C.

2

16. TIG Insurance Company failed to make any offer of settle-
    ment after receiving the demand letter referred to in
    Paragraph 15.

17. On November 14, 2003, the Plaintiffs, through counsel, sent
    to an authorized representative of TIG Insurance Company, a
    formal demand for settlement pursuant to M.G.L. c. 93A, via
    certified mail, for settlement of the liability claim.  A
    true and accurate copy of the M.G.L. c. 93A demand letter
    is attached hereto as Exhibit A.

18. An authorized representative of TIG Insurance Company
    received the demand letter referred to in Paragraph 17 on
    November 17, 2003.

19. On December 23, 2003, TIG Insurance Company responded to the
    demand letter referred to in paragraph 17.  A true and
    accurate copy of the response to the Plaintiffs' demand is
    attached hereto as Exhibit D.

20. In its response to the Plaintiffs' demand, TIG Insurance
    Company failed to make any offer of settlement.

**COUNT I, NEGLIGENCE**
**(v. Bombardier Recreational Products, Inc., BRP US, Inc. &**
**Spofford Motors, Inc.)**

21. Plaintiffs restate the allegations set forth in paragraphs
    1 through 20 above.

22. Defendants, Bombardier Recreational Products, Inc., BRP US,
    Inc. & Spofford Motors, Inc., as the manufacturers and/or
    distributors of the ATV, owned and controlled the ATV, and
    owed a duty to the plaintiffs to use care in the
    manufacture and marketing of the ATV.

23. The Defendants breached their duty to the Plaintiffs by
    designing the ATV is such a way as to contain an
    unreasonably dangerous condition, in that the cooling hose
    could become dislodged during normal use of the product.

24. The Defendants knew or should have known that the cooling
    hose could become dislodged during normal use of the
    product, and that the ability of the cooling hose to become
    dislodged was a dangerous feature of the ATV.

3

25. The Defendants further breached their duty to the Plaintiffs by selling an ATV without warning that the cooling hose could become dislodged during normal operation of the product.

26. As a proximate cause thereof, Plaintiff Brandon DeMyer, sustained serious injuries, great pain of body and mind, incurred substantial medical expenses, and has been and continues to be in pain when pursuing his normal activities.

   **WHEREFORE**, the Plaintiffs respectfully requests that this

Honorable Court enter judgment as follows:

   a.   Judgment against the Defendants, Bombardier Recreational Products, Inc., BRP US, Inc. & Spofford Motors, Inc., for actual and consequential damages sustained together with interest and costs; and

   b.   Such further relief as this Court may deem reasonable and just.

### COUNT II, BREACH OF WARRANTIES
(v. Bombardier Recreational Products, Inc., BRP US, Inc. & Spofford Motors, Inc.)

27. Plaintiffs restate the allegations set forth in paragraphs 1 through 26 above.

28. At the time of the sale of the ATV, the Defendants, their officers, agents, employees or directors, were a merchant with respect to the ATV and made express and implied warranties that the ATV was safe for the use for which it was intended.

29. As a proximate cause thereof, Plaintiff Brandon DeMyer, sustained serious injuries, great pain of body and mind, incurred substantial medical expenses, and has been and continues to be in pain when pursuing his normal activities.

4

**WHEREFORE,** the Plaintiffs respectfully requests that this Honorable Court enter judgment as follows:

    a.    Judgment against the Defendants, Bombardier Recreational Products, Inc., BRP US, Inc. & Spofford Motors, Inc., for actual and consequential damages sustained together with interest and costs; and

    b.    Such further relief as this Court may deem reasonable and just.

**COUNT III, M.G.L. c. 93A**
**(BRP US, Inc)**

30.    Plaintiffs restate the allegations set forth in paragraphs 1 through 29 above.

31.    The Defendant's sale and/or distribution of the ATV in breach of the implied warranty of merchantability constitutes an unfair and deceptive act or practice in violation of M.G.L. c. 93A, as well as, the regulations promulgated by the Attorney General of the Commonwealth of Massachusetts, 940 C.M.R. 3.08(2).

32.    Defendant's unfair and deceptive acts or practices were done willfully or knowingly in violation of M.G.L. c. 93A.

33.    As a result of Defendant's unfair and deceptive acts or practices, Plaintiff Brandon DeMyer sustained serious injuries, great pain of body and mind, incurred substantial medical expenses, and has been and continues to be in pain when pursuing his normal activities.

**WHEREFORE,** the Plaintiffs respectfully requests this Honorable Court enter judgment as follows:

    a.    Judgment against the Defendant, BRP US, Inc., for actual and consequential damages, with interest, costs and reasonable attorney's fees;

    b.    Award treble damages to the plaintiff as provided by M.G.L. ch. 93A, sec. 9; and

    c.    Such further relief as this Court may deem reasonable and just.

### COUNT IV, M.G.L. c. 93A
### (TIG Insurance Company)

34.   Plaintiffs restate the allegations set forth in paragraphs 1 through 33 above.

35.   In failing to make a reasonable offer of settlement, TIG Insurance Company committed an unfair and deceptive trade practice pursuant to M.G.L. c. 176D, sec. 3(9)(f) and sec. 3(9)(n) by failing to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear and by failing to provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the offer of a compromise settlement.

25.   The actions of TIG Insurance Company constitute a willful and knowing violation of M.G.L. ch. 93A and ch. 176D.

26.   TIG Insurance Company's failure to make a reasonable offer of settlement upon demand was done in bad faith and with knowledge or reason to know that TIG Insurance Company's actions violated M.G.L. ch. 93A and ch. 176D.

27.   As a direct result thereof, the Plaintiff has sustained damages.

**WHEREFORE**, the Plaintiffs respectfully requests this

Honorable Court enter judgment as follows:

   d.   Judgment against the Defendant, TIG Insurance Company, for actual and consequential damages, with interest, costs and reasonable attorney's fees;

   e.   Award treble damages to the plaintiffs as provided by M.G.L. ch. 93A, sec. 9; and

   f.   Such further relief as this Court may deem reasonable and just.

   **THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

6

Respectfully submitted,

Brandon DeMyer and Tamara
DeMyer, Plaintiffs
By their attorney,


_____
Adam Clermont, Esquire
Freedman, DeRosa and Rondeau
P.O. Box 746, 87 Marshall St.
Mass MoCA, Bldg. 1, Rm. 200
North Adams, MA 01247
(413) 664-1073
B.B.O.# 639769

Date:   December 15, 2004

7

# EXHIBIT B

### FREEDMAN, DeRosa & RONDEAU
ATTORNEYS AND COUNSELLORS AT LAW
85 MAIN STREET, P. O. BOX 746
NORTH ADAMS, MASSACHUSETTS  01247-0746
TELEFAX  (413) 664-7379
(413) 664-1073

John B. DeRosa
Patrick E. Rondeau *
Thomas Manuel *
Brigid Hennessey +
Adam P. Clermont
Jeremia A. Pollard
Jan P. Myskowski

Morton Freedman
Senior Counsel
--------------------
* Also admitted VT
+ Also admitted NY

September 4, 2003

CERTIFIED MAIL #7002 3150 0004 4045 4250 & 7002 3150 0004 4045 4243

Bombardier Motor Corporation of America
Attn: Nancy Larsen
7575 Bombardier Court
Wausau, WI 54401

South Valley Claims, Inc.
TIG Insurance Company
Attn: Mary Ann Johnson
P.O. Box 248
330 Tennant Avenue
Morgan Hill, CA 95037

Re:  My Client:     Brandon DeMyer
     Your Insured:  Bombardier/Village Automotive
     Claim No.:     TIG39283284
     DOL:           June 7, 2002

Dear Ms. Larson and Ms. Johnson:

As you know, I represent Brandon DeMyer ("Brandon") with respect to his claim for personal injuries sustained on June 7, 2002 as a result of a defective product manufactured by Bombardier Motor Corporation of America and sold by Village Automotive. The following represents our formal demand for settlement.

### LIABILITY

David Reichart purchased a used Bombardier DS 650 all terrain vehicle from Village Automotive, which is located in North Hoosick, New York, sometime prior to June 7, 2002. On June 7, 2002, Lance Jay Bingham, who is Brandon's father, borrowed Mr. Reichart's Bombardier so that he could take his son riding. As. Mr. Bingham operated the Bombardier with his son sitting in front of him, a cooling hose, which led from the radiator to the engine,

Bombardier Motor Corporation of America
South Valley Claims, Inc.
September 4, 2003
Page 2

dislodged and doused Brandon with hot cooling fluid. At the time of the accident, Mr. Bingham was operating the Bombardier on a level field.

An investigation conducted after the accident revealed that the coolant hose was secured to the motor by an adjustable pipe clamp. This is not a preferred method for attaching a coolant hose, as the heat from the coolant will cause the hose to expand and become pliable. Because the metal pipe clamp is unable to automatically adjust to the changes in the coolant hose, the coolant hose will loosen as a result of the vibration from the motor and the lubricating effect of the coolant. Thus, a pipe lip is needed to assist the pipe clamp in securing the coolant hose to the engine.

An examination of the Bombardier indicated the pipe leading into the engine that the cooling hose attached to had a diameter of .750 inches, with a lip diameter of .0785. Those figures indicate that the lip difference was a mere 0.0175. In comparison, standard automobile radiators have a pipe diameter of 1.311 inches in diameter with a lip diameter of 1.391 inches, which gives a lip difference of 0.040 inches radially. A lip difference of 0.0175 was insufficient to ensure that the pressurized cooling hose remained attached during normal operation of the Bombardier and the product could have been made safer by increasing the lip difference. The cost of increasing the lip difference would be minimal.

In addition to having a deficient pipe lip size, our investigation revealed that the Bombardier lacked sufficient shielding to protect the cooling hose from becoming dislodged, and, should the cooling hose do so, the operator. The design on the Bombardier permitted branches and stones to come into direct contact with the cooling hose during normal operation. Additionally, the lack of shielding permitted an operator to come into direct contact with the hose during the process of mounting or dismounting the Bombardier. If the coolant hose were to crack or dislodge, there is no shield to prevent the hose from spraying hot coolant over the operator. The cost of adding shielding to prevent the coolant hose from becoming dislodged and spraying the operator would also be minimal.

Finally, the Bombardier lacked sufficient warnings to warn the operator of the possibility that the coolant hose could dislodge. There were no indications on the Bombardier or in its operator's manual that warned the operator that it was possible for the cooling hose to dislodge during normal operation. Additionally, the operator's manual did not instruct the operator to inspect the coolant hose and hose clamp prior to operation to ensure that the coolant hose was properly secured.

The facts reveal that the Bombardier manufactured by Bombardier Motor Corporation of America and sold by Village Automotive was unreasonably dangerous because it had a deficient pipe lip, lacked adequate shielding and warnings to alert the operator of the possibility that the coolant hose could dislodge. Therefore, liability in this case is clear.

Bombardier Motor Corporation of America
South Valley Claims, Inc.
September 4, 2003
Page 3

## DAMAGES

As a result of the coolant hose dislodging, Brandon was sprayed with coolant that was at or near its maximum operating temperature. The coolant was so hot that it caused the skin on Mr. Brandon's left leg to blister from his thigh to his ankle. Attached as "Exhibit A" are pictures of Brandon's injury. Brandon, who was in excruciating pain due to the first, second and third degree burns that covered his leg, was immediately transported to Berkshire Medical Center.

The attending emergency room physician examined Brandon after he arrived at Berkshire Medical Center. The physician noted that Brandon suffered a first-degree burn from his anterior thigh to his ankle. The physician also noted that Brandon had second-degree burns in three separate areas within the first-degree burn. The physician then applied a Bacitracin dressing, gave Brandon Tylenol with codeine for pain and instructed him to return in the morning.

Brandon returned to Berkshire Medical Center on June 8, 2002. The attending physician indicated that he did not observe any signs of infection. However, the physician did note that Brandon's proximate thigh blister broke. The physician applied another Bacitracin dressing and instructed Brandon to consult with Dr. Csank, who is a plastic surgeon.

Brandon first saw Dr. Csank on June 12, 2002. Dr. Csank's examination revealed that the blisters that were previously present on Brandon's foot and upper thigh had ruptured. Dr. Csank also noted that the previously reddened area on Brandon's leg had blistered. Dr. Csank debrided the extensive blistering to Brandon's thigh, leg and foot and applied a Bacitracin dressing.

Dr. Csank next examined Brandon on June 17, 2002. Dr. Csank indicated in his note that all of Brandon's superficial burns had re-epithelialized. However, Dr. Csank also noted that the area on the dorsum of Brandon's foot had not re-epithelialized. Dr. Csank noted that if the area did not re-epitheliaize in 10-14 days, he would consider performing an excision and split-thickness skin graft coverage.

Brandon returned to Dr. Csank's office on July 1, 2002. Dr. Csank's examination of Mr. DeMyer revealed that a 10 x 6 cm area of granulating wound on the dorasal instep of his foot with no evidence of re-epitheliazation. Dr. Csank explained the treatment options available, and Mr. DeMyer decided to proceed with debridement and split-thickness graft coverage of his third degree burn. Dr. Csank then made arrangements to perform the procedure at the Crane Center under general anesthesia.

On July 5, 2002, Brandon arrived at the Crane Center for the debridement procedure. Dr. Csank began the procedure by administering intravenous antibiotics and general anesthesia. Dr. Csank then debrided the wound until a good bleeding base was achieved. Dr. Csank then took

Bombardier Motor Corporation of America
South Valley Claims, Inc.
September 4, 2003
Page 4

an 8 by 5 cm partial thickness skin graft from Brandon's thigh. Dr. Csank tailored the skin graft to the defect and sutured it in, using 5-0 chromic interrupted and running stitches.

Dr. Csank examined Brandon again on July 10, 2002 and July 17, 2002. Dr. Csank noted on those dates that Mr. Brandon's skin graft had taken and that the donor site looked benign. On Brandon's July 17, 2002 visit, Dr. Csank instructed him to return in four weeks to evaluate his progress.

Brandon next saw Dr. Csank on August 19, 2002. Dr. Csank's examination revealed mild hypertrophy at the skin-grafted area. Dr. Csank recommended that Brandon wear a silicone sheet and instructed him to return in three months.

Dr. Csank examined Brandon again on February 5, 2003. Dr. Csank's examination revealed a hypertrophic, raised scar on Brandon's skin grafted area. Dr. Csank prescribed Mr. Brandon Jobst stockings and silicone sheeting, which Mr. DeMyer was required to wear 24 hours a day.

In a letter dated August 6, 2003, Dr. Csank writes, "[i]n assessment, Brandon suffered a burn injury to the left lower extremity. The total extent of the burn injury was 8% of body surface area, of which 1% was third-degree burn that required reconstruction." Although at the time of Dr. Csank's last appointment approximately 8 months had elapsed from the date of Brandon's injury, Dr. Csank was unable to state whether Brandon would experience further recovery.

As a result of this terrible accident, Brandon suffered extreme pain, not only from the hot coolant that sprayed over 8% of his body, but also from the surgical procedures he was required to endure. The pictures of Brandon's injuries speak for themselves. Brandon was left with significant scarring over his left leg. Brandon has been very reluctant to engage in any kind of athletic activities at school because he is very self-conscious about his scar. Additionally, Brandon continues to experience pain in his right leg and has incurred $5,688.86 in medical bills for treatment of his injuries.

While Brandon and his family would prefer that this horrible accident never occurred rather than receive compensation for his financial losses and pain and suffering, that is not possible. We therefore request that your company do everything in its power to adequately compensate Brandon for his injuries. Toward that end, we demand that Bombardier Motor Corporation of America and South Valley Claims, Inc. pay $550,000.00 to settle this claim.

Respectfully,


Adam Clermont

Enclosures
pc: Brandon J. DeMyer, without enclosures